UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE A. HOWEN, et al.,<br><br>Defendants. | No. 1:21-cv-00106-DAD-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY<br><br>(Doc. No. 18) |

Before the court is defendants Lawrence A. Howen's and Nor-Cal Pharmacies, Inc. d/b/a Lockeford Drug's motion to stay these proceedings, which was filed on December 30, 2021. (Doc. No. 18.) Defendants' motion was taken under submission to be decided on the papers. (Doc. No. 19.) The government opposed defendants' motion on February 1, 2022 (Doc. No. 20), and the defendants filed their reply brief on February 8, 2022. (Doc. No. 21.) For the reasons discussed below, the court will grant defendants motion and stay the proceedings in this action.

**BACKGROUND**

On January 26, 2021, the government initiated a civil enforcement action against the defendants—a pharmacist and his pharmacy—for violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Controlled Substances Act" or "CSA"), 21 U.S.C. §§ 801 *et seq*. (Doc. No. 1.) The government seeks civil penalties from defendants for alleged violations of the CSA's implementing regulations and an order permanently enjoining defendants from

1

dispensing controlled substances. (*Id.* at ¶¶ 114–127.) Specifically, the complaint's four counts are for: (1) failure to exercise corresponding responsibility in violation of 21 C.F.R. § 1306.04(a); (2) failure to adhere to the usual course of professional practice in violation of 21 C.F.R. § 1306.06; (3) failure to maintain required records; and (4) a claim seeking injunctive relief under 21 U.S.C. § 843(f).

The statutory and regulatory framework relied on by the government provides as follows: 21 U.S.C. § 842(a)(1) makes it unlawful for any person "to distribute or dispense a controlled substance in violation of [21 U.S.C. § 829]." *Id.* In turn, § 829 generally provides that controlled substances that are deemed prescription drugs may not be dispensed without a written prescription. *See* 21 U.S.C. § 829. The more specific rules that govern the issuing and filling of prescriptions under § 829 are set forth in regulations 21 C.F.R. §§ 1306.01–1306.27. *See* 21 C.F.R. §§ 1306.01. The government's first two counts allege violations under two of these implementing regulations. (Doc. No. 1 at ¶¶ 115, 119.)

The government's first count relies on 21 C.F.R. § 1306.04, which provides, in part:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04(a). In other words, the regulation provides that an "effective" prescription is one "issued for a legitimate medical purpose" by a prescriber "acting in the usual course of his professional practice." *Id.* A prescriber is responsible for properly prescribing and dispensing of "effective" prescriptions, but pharmacists also have a "corresponding responsibility" when filling those prescriptions. *Id.* More specifically, a pharmacist must not "knowingly" fill prescriptions that purport to be a prescription that was not issued "in the usual course of professional treatment." *Id.* In the government's complaint, the first count alleges that defendants violated

2

this regulation by "knowingly dispensing controlled substances pursuant to prescriptions that were either not issued in the usual course of professional treatment, not issued for a legitimate medical purpose, or both." (Doc. No. 1 at ¶ 115.)

The second count of the government's complaint relies on 21 C.F.R. § 1306.06, which provides, in part: "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice . . .." *Id.* As with prescribers in the first sentence of § 1306.04(a), § 1306.06 requires that a pharmacist must act within "the usual course of his professional practice" when filling prescriptions. *Id.* In the government's complaint, the second count alleges that defendants "fail[ed] to adhere to the usual course of the professional practice of pharmacy in filling prescriptions for controlled substances." (Doc. No. 1 at ¶ 119.)

On March 12, 2021, defendants filed a motion to dismiss the government's complaint for failure to state a claim. (Doc. No. 7.) The government opposed the motion (Doc. No. 12) and defendants replied. (Doc. No. 13.)

On November 5, 2021, the Supreme Court granted certiorari in a pair of consolidated criminal cases involving both 21 U.S.C. § 841(a)(1) and 21 C.F.R. § 1306.04(a), including the proper construction of the phrase "the usual course of professional practice."[1] *See Kahn v. United States*, 142 S. Ct. 457 (2021); *Ruan v. United States*, 142 S. Ct. 457 (2021). Oral argument before the Supreme Court was held in those cases on March 1, 2022. The questions before the Supreme Court in *Ruan* and *Kahn* are summarized, in part, as follows: (1) whether a physician accused of prescribing controlled substances acting outside the "usual course of professional practice" may be convicted for violating 21 U.S.C. § 841(a)(1) without regard to whether, in good faith, he or she "reasonably believed" or "subjectively intended" that the prescriptions fall within that course of professional practice; and (2) whether the phrases "usual course of professional practice" and "issued for a legitimate medical purpose" in the first sentence of 21 C.F.R. §§ 1306.04(a) should be read in the conjunctive or disjunctive. *See* Brief for Petitioner at i, *Ruan v. United States*, No.

---

[1] Although this civil action before the court is brought under 21 U.S.C. § 842(a)(1), a criminal action for the unauthorized dispensing of controlled substances may be brought pursuant to 21 U.S.C. § 841(a)(1).

3

20-1410 (U.S. filed Dec. 20, 2021), 2021 WL 6138172 at *i; Brief for Petitioner at i, *Kahn v. United States*, No. 21-5261 (U.S. filed Dec. 20, 2021), 2021 WL 6118301 at *i.

On December 30, 2021, defendants filed a motion to stay the proceedings in this case pending the Supreme Court's rulings in *Ruan* and *Kahn*, which defendants contend "could significantly affect" the resolution of the first two counts of the government's complaint. (Doc. No. 18 at 3.) The government opposed the motion on February 1, 2022, based upon its belief that the Supreme Court will address only "the *mens rea* the government must establish to secure the [criminal] conviction of a licensed medical practitioner," in deciding *Ruan* and *Kahn,* as well as for other reasons. (Doc. No. 20 at 2.) Defendants filed their reply brief on February 8, 2022. (Doc. No. 21.)

**LEGAL STANDARD**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Stone v. INS*, 514 U.S. 386, 411 (1995) (Breyer, J., dissenting) ("[W]e have long recognized that courts have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis*, 299 U.S. at 254). Deciding whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. The party seeking such a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255.

In considering whether to grant a stay, this court must weigh several factors, including "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). A stay may be granted regardless of whether the

4

separate proceedings are "judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

## ANALYSIS

In their pending motion, defendants argue that the Supreme Court's decision in *Ruan* and *Kahn* will "materially affect this litigation" and that requiring them to defend this suit before those cases are resolved could lead to "irreparable injury." (Doc. No. 18 at 7–10.) The government counters that defendants must show "a clear case of hardship or inequity" and have failed to do so, that the Supreme Court's resolution of *Ruan* and *Kahn* are unlikely to impact this civil case, and that staying this action would be inefficient. (Doc. No. 20 at 2.) Defendants maintain in their reply brief that the government will not be harmed by the likely short delay because defendants "are not practicing pharmacy and there is no possibility for them to re-start their practice." (Doc. No. 21 at 4.) Having considered the parties arguments and weighed the relevant factors articulated by the Ninth Circuit, the court will grant defendants motion for a stay of these proceedings pending the Supreme Court's decision in *Ruan* and *Kahn*.

First, the court must consider the possible damage that may result from granting the stay. *CMAX*, 300 F.2d at 268. The government's complaint seeks civil penalties and a permanent injunction preventing defendants from dispensing controlled substances; a stay would delay the government from potentially obtaining that relief on behalf of the public interest. (Doc. No. 20 at 5–6.) At the same time, however, any stay imposed here would be limited in duration to approximately three months because it will end once the Supreme Court issues its decision in *Ruan* and *Kahn*, likely in late June or early July 2022 (*see* https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-1). *Cf. Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007) (finding a stay that depended on the conclusion of an arbitration being conducted in a foreign country that had not even commenced violated "the general policy favoring stays of short, or at least reasonable, duration"). Here, the government strenuously argues that the fact it is seeking injunctive relief means there is a "fair possibility" of harm to the public interest such that

defendants must make out a "clear case of hardship or inequity." (Doc. No. 20 at 6.) However, the court is not convinced that there is a "fair possibility" of harm here because, unlike in the cases cited by the government, there does not appear to be any ongoing harm in this case. *Cf. City of Sacramento v. Wells Fargo & Co.*, No. 2:18-cv-00416-KJM-GGH, 2019 WL 11093495, at *3 (E.D. Cal. Nov. 20, 2019) (denying a stay when the plaintiffs sought "injunctive relief to prevent ongoing harm from defendants' [Fair Housing Act] violations"); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (finding a stay to be improper when "the Attorney General seeks injunctive relief against ongoing and future harm"). Here, by contrast, the government alleges in its complaint in this action that defendants ceased operations in 2019 (Doc. No. 1 at ¶¶ 107, 113) and their licenses were revoked by the state of California, as acknowledged by the government in its opposition to defendants' pending motion to dismiss. (Doc. No. 12 at 19) (citing *In the Matter of the Accusation Against Nor-Cal Pharmacies; Lawrence Howen*, Case No. 6781, at *6 (April 30, 2020)).[2] Moreover, in opposing the pending motion for a stay the government does not assert any specific ongoing or expected future harm stemming from defendants or their activities. (*See* Doc. No. 20 at 5–6.) Of course, "[j]ust because injunctive relief is available does not mean the harm persists" or that the court must deny a request for a stay. *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-cv-0628-TWR-AGS, 2020 WL 7625144, at *2 (S.D. Cal. Dec. 21, 2020) (granting a stay even when injunctive relief was sought because there was no showing of any ongoing harm).

      The government also notes its general interests in preserving the quality of evidence and recovering civil penalties. (Doc. No. 20 at 6.) Although these are important interests, the government has not identified any specific evidence it is concerned will deteriorate over the course of the next three months, and in fact, it appears some discovery has already been conducted in this action. (*Id.*; Doc. No. 18 at 6–7.) The government also has not specifically explained how its interest in collecting civil penalties would be harmed by the granting of the

---

[2] The California Board of Pharmacy's decision is available at, https://www.pharmacy.ca.gov/enforcement/fy1920/ac196781.pdf.

limited delay were a stay to be granted.[3] (Doc. No. 20 at 6–7.) As such, the court does not have a clear basis upon which to find that there would be any harm to these interests in light of the limited duration of the proposed stay. *See Burnell v. Swift Transportation Co.*, No. 5:10-cv-00809-VAP-OP, 2011 WL 13352810, at *5 (C.D. Cal. Jan. 20, 2011) ("While the risk of lost evidence is inherent in every stay, Plaintiffs' risk in this case is mitigated considerably by the fact that they already have received some informal discovery."); *Grundstrom v. Wilco Life Ins. Co.*, No. 20-cv-03445-MMC, 2020 WL 6873645, at *2 (N.D. Cal. Oct. 13, 2020) (granting a stay even when injunctive relief and remedial damages were sought and noting that "delay in receiving damages is an insufficient basis to deny a stay"). Accordingly, on balance, the court finds that consideration of this factor is neutral and does not weigh against the granting of the stay sought by defendants.

Second, the court must evaluate "the hardship or inequity which a party may suffer in being required to go forward." *CMAX*, 300 F.2d at 268. Defendants principally argue that denying their request for a stay "could lead to irreparable injury" due to the "costs of pretrial litigation." (Doc. No. 18 at 10.) The government maintains that under Ninth Circuit precedent, "being required to defend a suit . . . does not constitute a clear case of hardship or inequity." (Doc. No. 20 at 7) (quoting *Dependable*, 498 F.3d at 1066). But the cited quote comes from the Ninth Circuit's decision in *Lockyer* where the party opposing the stay had made out a "fair possibility" of harm were a stay to be granted. *See Lockyer*, 398 F.3d at 1112 (explaining that there was a fair possibility of harm established by the California Attorney General in its suit against an operator of power plants seeking to halt an "ongoing illegal concentration of market power that [was] threaten[ing] economic harm to electricity consumers"). In contrast, "when the

---

[3] The cases cited by the government for the proposition that a stay would stultify civil enforcement of federal law are inapposite because in each the court was evaluating a stay that would postpone civil enforcement pending the outcome of a criminal proceeding. (Doc. No. 20 at 6–7) (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970); *F.T.C. v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1197 (C.D. Cal. 2000); *Securities and Exchange Commission v. Zachary J. Horwitz et al.*, No. 2:21-cv-02927-CAS-GJSX, 2021 WL 2942231, at *4 (C.D. Cal. July 12, 2021)). Here, there is no related criminal proceeding against defendants known to the court, and thus the reason—and critically the duration of the proposed stay in this case—is completely different.

opponent does not adduce evidence that it will be harmed by a stay[,] . . . courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship." *Grundstrom*, 2020 WL 6873645, at *3. Thus, on balance, the court finds that consideration of this factor to be neutral and does not weigh against the granting of a stay in this case.

Third, the court must weigh "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268. This third factor addresses judicial economy, which "is the primary basis courts consider when ruling on motions to stay." *Vance v. Google LLC*, No. 5:20-cv-04696-BLF, 2021 WL 534363, at *6 (N.D. Cal. Feb. 12, 2021). Although the court acknowledges that *Ruan* and *Kahn* are criminal cases, the Supreme Court's resolution of the issues posed by those cases could be highly relevant in interpreting the precise regulations before the court in this case. The primary issue in *Ruan* and *Kahn* concerns what level of scienter the government must prove to show that a physician acted outside the "usual course of professional practice." *See* Brief for Petitioner at i, *Ruan v. United States*, No. 20-1410 (U.S. filed Dec. 20, 2021), 2021 WL 6138172 at *i. In deciding that question, this court believes it is likely that the Supreme Court will also be required to address the meaning of the "usual course of professional practice"—a phrase codified in the regulations at issue in this case and in *Ruan* and *Kahn*. Guidance on the appropriate interpretation of this language would "be of valuable assistance to the court" in ruling on the pending motion to dismiss. *Leyva*, 593 F.2d at 863. For instance, the government's second count—a violation of 21 C.F.R. § 1306.06—appears to depend entirely on the meaning of the phrase "usual course of professional practice," and thus the Supreme Court's ruling in *Ruan* and *Kahn* could be critical to this court's disposition of the pending motion to dismiss that count. The Supreme Court is also addressing the circumstances under which a prescription is deemed valid or "effective" under 21 C.F.R. § 1306.04(a), which in turn, could well affect when pharmacists are to be held liable for knowingly filling prescriptions purporting to be valid or "effective" prescriptions under the same regulation. *See* Brief for Petitioner at 3, 33, *Kahn v. United States*, No. 21-5261 (U.S. filed Dec. 20, 2021), 2021 WL 6118301 at *3, 33; *see also* Brief for National Association of Chain Drug Stores as Amicus Curiae Supporting

Neither Party at 3, *Ruan v. United States*, No. 20-1410 (U.S. filed Dec. 27, 2021), 2021 WL 6138193 at *3 (arguing that "the Court's interpretation of 21 C.F.R. § 1306.04—the regulation at the center of Petitioners' good-faith defense—could have a potentially sweeping effect on pharmacists and the practice of pharmacy").

One other district court faced with a civil enforcement action asserting the same counts as the government asserts in this action has found that the pendency of *Ruan* and *Kahn* before the Supreme Court warranted a stay.[4]  *See United States v. Walmart Inc. et al.*, No. 1:20-cv-01744-CFC, at Doc. No. 59 (D. Del. Nov. 19, 2021).  When the district court in *Walmart* entered its stay, the Supreme Court's decision in *Ruan* and *Kahn* was not expected for seven months, but here the wait would now only be approximately three months.  As the district court in *Walmart* concluded, the short wait to gain the benefit of the Supreme Court's guidance on the government's first two counts would promote "the orderly course of justice."  *See Leyva*, 593 F.2d at 863–84 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").  The court therefore finds that consideration of the judicial economy factor weighs heavily in favor of staying this action.[5]

---

[4] The district court in *Walmart* issued a summary order on the stay because the government withdrew its opposition to Walmart's motion seeking that stay.  *See Walmart Inc. et al.*, No. 1:20-cv-01744-CFC, Doc. Nos. 58, 59.  However, the transcript from the status hearing discussing *Ruan* and *Kahn* appears on that court's docket reflecting the district court's strong belief that a stay was appropriate given the potential guidance from the Supreme Court's decision in *Ruan* and *Kahn*.  *See id.*, Doc. No. 60 at 10–11, 13 (explaining to the litigants that the court has "an unsustainable caseload," that "from a judicial resource point of view, it makes sense for me to tackle this when I could have a Supreme Court opinion in seven months," and that the pending motion to dismiss raised "very serious issues about the meaning of these regs and issues . . . that are going to require some serious thought and a lot [] more serious work on my part").

[5] The government's citations to the undersigned's decisions in *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2017 WL 3172979, at *2 (E.D. Cal. July 26, 2017) and *Brandt v. Ocwen Loan Servicing, LLC*, No. 1:17-cv-00643-DAD-EPG, 2017 WL 5878581, at *4 (E.D. Cal. Nov. 29, 2017) are unpersuasive here.  (Doc. No. 20 at 9.)  Those cases are inapposite because, among other distinctions, the pending decision that the moving party argued warranted the granting of a stay was from the D.C. Circuit and a Ninth Circuit decision had already been issued dictating the same outcome that would result if the D.C. Circuit ultimately ruled the way that the moving party hoped.  *Brandt*, 2017 WL 5878581, at *4.

Accordingly, due to the short length of the proposed stay coupled with the overlap and expected guidance from the Supreme Court, this court will grant defendants' motion to stay this action pending the Supreme Court's decision in *Kahn* and *Ruan*.

## CONCLUSION

For the reasons set forth above,

1. Defendants motion to stay (Doc. No. 18) is granted;

2. This case is stayed until 14 days after the decision in *Kahn v. United States*, 142 S. Ct. 457 (2021) and *Ruan v. United States*, 142 S. Ct. 457 (2021) is issued; and

3. The parties are directed to file a joint status report within 14 days after the resolution of *Kahn v. United States*, 142 S. Ct. 457 (2021) and *Ruan v. United States*, 142 S. Ct. 457 (2021) that addresses whether supplemental briefing in light of that decision is necessary in order for the court to resolve defendants' pending motion to dismiss (Doc. No. 7).

IT IS SO ORDERED.

Dated: **April 1, 2022**

UNITED STATES DISTRICT JUDGE